**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━

**MICHAEL ANTHONY P.,**

                      **Plaintiff,**                      **20-CV-1060Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━

<u>**DECISION AND ORDER**</u>

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #19.

**BACKGROUND**

        Plaintiff worked as a material handler for Safety Kleen from 1990 until July

2, 2008. Dkt. #8, p.57. On that date, plaintiff was sampling the fluids from a cage above

a tanker when the truck pulled away, causing him to hit the tanker and then fall to the

ground. Dkt. #8, p.592. He was hospitalized until July 5, 2008 with diagnoses including

transverse process fractures L1-L5; nondisplaced fracture of the middle third of the right

clavicle; fracture of the left sacrum; right fifth rib fracture; small right lower lobe base

pneumothorax; and possible small hemorrhagic contusion involving the frontal lobes

bilaterally. Dkt. #8, p.592.

Anthony M. Leone, M.D., Spine and General Orthopaedic Surgeon, reviewed medical records and examined plaintiff for an independent medical examination on June 28, 2011. Dkt. #8 p.483. Dr. Leone noted that the MRI showed a bulge at L2-3, no herniation at L3-4, a broad based herniation minimally asymmetric to the right at L4-5, and right sided facet degenerative changes, but observed that plaintiff

> could bend forward 90 degrees, bend backwards 30
> degrees. Side bending caused a pinching sensation on the
> right side when he was bending to the right. His gait was
> normal. He walks with equal strength when walking on the
> toes and heels. . . . Straight leg raising, nerve root tension
> sign, and Lasegue test are negative. Strength is 5/5. FABER
> test is negative bilaterally. Lying straight leg raise is to 70
> degrees at least on both sides and shows no evidence of
> any significant pain or symptomology. Range of motion in
> the lower extremities is normal at the ankles, knees and
> hips. The knees are stable to varus and valgus stress.
> Range of motion is zero to 125 degrees.

Dkt. #8, pp.489 & 496-497. As far as plaintiff's lumbar spine was concerned, Dr. Leone opined that plaintiff "exhibits little objective evidence of disability and would be considered to have minimal disability based on his clinical evaluation." Dkt. #8, p.497. With respect to plaintiff's clavicle fracture, Dr. Leone noted that plaintiff's treating physician indicated that plaintiff's fracture was healed and that plaintiff could return to work without any restrictions. Dkt. #8, p.497. Moreover, plaintiff demonstrated full range of motion and no loss of strength upon examination. Dkt. #8, p.497. Accordingly, Dr. Leone opined that he did not believe that plaintiff had any significant disability as a result of the clavicle fracture. Dkt. #8, p.497.

Plaintiff sustained multiple left facial fractures and complained of back pain after a motor vehicle accident on August 3, 2012. Dkt. #9, pp.377, 381, 555-562.

In December of 2012, Dr. Leone reviewed additional medical records which confirmed his opinion that plaintiff was "moving in the right direction" and "certainly capable of working." Dkt. #10, p.24.

Dr. Leone reviewed medical records and examined plaintiff again on May 14, 2013. Dkt. #9, pp.927-930. Plaintiff reported that he was experiencing

> back pain into the right buttock. Sitting if he is maintaining good posture is okay. Standing is not too bad. Walking is not too bad. He cannot lift much. Bending causes some discomfort. At night he gets some discomfort . . . no other treatments have been recommended for the back.. . . He states that he is able to take care of himself such as washing himself, dressing himself, and feeding himself.

Dkt. #9, pp.927-928. On physical examination, plaintiff was observed to

> bend forward 90 degrees, bend backwards 20 degrees. He has normal side bending and rotation. He is tender from L1 all the way to S1 in the entire lumbar spine. He has a normal gait. He can walk on his toes and heels. Strength is intact. Reflexes symmetric. Vibration sense is intact. He has excellent range of motion in the digits, wrists, and elbows. Full pronation and supination of the forearm; actually only lacks some internal rotation of the shoulder by 2 verterbral levels, otherwise he does not really have any symptoms with respect to the shoulder as far as the clavicle fracture is concerned.

Dkt. #9, p.930. Dr. Leone opined that plaintiff "has obvious dis[c] disease in the lumbar spine" and had reached maximum benefit from all of the normal conservative measures that had been tried. Dkt. #9, p.930. Applying New York State Workers' Compensation Guidelines, Dr. Leone opined that plaintiff had a moderate-to-marked partial disability. Dkt. #9, p.930. More specifically, Dr. Leone opined that from an orthopaedic standpoint, plaintiff could perform modified-type activity, with no repetitive bending, twisting, or

overhead activity and no lifting, pushing, pulling or carrying of more than ten pounds.
Dkt. #9, p.930. With respect to the clavicle, Dr. Leone noted that plaintiff had "excellent
functional range of motion and does not have any significant deficits as a result of that."
Dkt. #9, p.930.

On July 25, 2013, plaintiff underwent a functional capacity evaluation with
Occupational Therapist, Registered ("OTR"), Jennifer Gula at Buffalo Ergonomics &
Rehabilitation Services. Dkt. #9, p.5. OTR Gula noted a few complaints of low back
pain during testing, but determined that plaintiff demonstrated the ability to perform light
physical demand level work and recommended that he be referred for vocational
counseling to assist him in obtaining gainful employment. Dkt. #9, p.5. Plaintiff was
assessed with mild limitation in ambulation activities such as walking, stair climbing and
step ladder climbing; mild limitation in static sitting and standing; and mild limitation in
postural activities such as elevated work/reaching, rotation in standing, forward bending
in standing, kneeling, and crawling. Dkt. #9, p.6.

On August 13, 2013, plaintiff was reevaluated by Dr. Leone. Dkt. #8,
p.667. He was observed to

> bend forward about 80 to 90 degrees, bend backwards 20
> degrees. He has a normal gait and walks with equal stride.
> He can walk on his toes and heels. Strength was 5/5.
> Reflexes were symmetric. Muscle bulk and tone is normal.
> There are no abnormalities or differences compared to his
> exam three months ago. He does have some tenderness at
> L5-S1.

Dkt. #9, p.1. Dr. Leone opined that plaintiff's condition remained the same. Dkt. #9, p.1.

Applying  New York State Impairment Guidelines, Dr. Leone opined that plaintiff "would have a class 3 medical impairment class, severity ranking B, which is recurrent persistent symptoms, no objective clinical findings consistent with spinal pathology and positive correlative imaging findings (in this case the MRI findings noted at L4-5 and L5-S1)." Dkt. #9, p.1.

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on December 19, 2014, alleging disability beginning July 2, 2008, at the age of 46, due to head injury, back injury, short term memory loss, depression, bipolar disorder, shoulder, frequent urination and hearing loss. Dkt. #8, p.185.

An MRI of the lumbar spine on April 7, 2015 revealed a central L4-5 disc herniation indenting the anterior aspect of the thecal sac; a left far lateral L3-4 disc herniation projecting into the distal left L3-4 neural foramen and impinging on the left L3 nerve root in the distal neural foramen; and a right paracentral L2-3 disc herniation indenting the anterior aspect of the thecal sac. Dkt. #9, p.471.

Dr. Leone's review of plaintiff's medical records dated May 7, 2015 from Dr. Cappuccino indicate that plaintiff's lumbar flexion was observed to be 40 degrees, with extension limited to 20 degrees. Dkt. #10, p.27. Dr. Capppuccino requested authorization for L3-4 and L4-5 decompression and fusion with instrumentation. Dkt. #10, p.27. Dr. Cappuccino performed a right lateral retroperitoneal subtotal discectomy,

partial corpectomy, anterior lumbar interbody fusion at L4-5 and attempted anterior

lumbar interbody fusion at L3-4 on July 7, 2015 and a bilateral L4-5 foraminotomy and

decompression with facet and intertransverse fusion at L4-5 on July 28, 2015. Dkt. #10,

pp.10, 27 & 80.

Dr. Leone evaluated plaintiff on November 9, 2015. Dkt. #9, p.951. In light

of the fact that plaintiff's last surgery was only a little more than three months prior to

his examination, Dr. Leone opined that plaintiff had an overall marked partial disability

and was limited to sedentary type work with no bending, twisting, or overhead activity

and no lifting, pushing, pulling or carrying more than 5-10 pounds. Dkt. #9, p.953. Dr.

Leone recommended additional aqua therapy followed by physical therapy. Dkt. #9,

p.953.

Upon examination on February 15, 2016 - seven months out from a

lumbar fusion - Dr. Leone observed 35 degrees of flexion of the lumbar spine; 10-15

degree extension; 15 degree sidebending; full rotation to the right; 50% rotation to the

left and tenderness at L5-S1. Plaintiff walked with a normal gait and was able to walk

on his toes and heels. Dkt. #10, p.10.

In a report dated March 10, 2016, Dr. Leone clarified that his 2013 and

2015 evaluations were in accordance with the Workers' Compensation Board

Guidelines, which incorporated plaintiff's subjective reports of difficulties with activities.

Dkt. #10, p.25. Dr. Leone opined that in 2013, from a purely objective standpoint,

plaintiff had some degenerative changes in the lower lumbar spine but no neurologic

deficits, no objective clinical findings, no loss of motion, no loss of function, no need for

walking aids, no disturbance of gait, no bowel or bladder incontinence, and did not

require assistance with activities of daily living that would indicate any significant

objective disability. Dkt. #10, p.26. With respect to the 2015 opinion, Dr. Leone clarified

that those restrictions were because plaintiff was only four months out from surgery.

Dkt. #10, p.26. Dr. Leone also noted that the three workers' compensation evaluations

were performed independently of the examination in 2011 and that he did not have the

benefit of the functional capacity evaluation when rendering his opinion for the workers'

compensation evaluations. Dkt. #10, p.13. Dr. Leone explained that "the workers'

compensation evaluations were done with a much smaller amount of background

medical data and were done for the workers comp board using their criteria." Dkt. #10,

p.13. Dr. Leone then opined that:

> It is well documented in the literature that discs do not
> improve and deteriorated discs and degenerative discs will
> progress over time. Between 2009 and 2015 (somewhere
> between five to six years), the disc at L4-5 became more
> degenerative. More importantly the disc at L3-4 which really
> showed no significant abnormalities in 2008 and 2009 began
> to show signs of degeneration and bulging in 2014 and
> 2015. Certainly, that disc, which was normal after the
> incident of record, was not made abnormal by the incident in
> 2008. The abnormalities for which he had surgery in 2015 at
> L3-4 were clearly not due to the incident in 2008, seven
> years earlier. Furthermore, the significant gap between Dr.
> Cappuccino's last note from 8/25/2011[1] and the last note

---

[1] Dr. Cappuccino provided plaintiff's attorney with a narrative summary of plaintiff's
treatment on August 25, 2011, indicating that although plaintiff had opted to continue
conservative care for his lumbar spine,
> he had what I believe are permanent injuries to the lumbar spine
> with fractures of the L1 and L4 transverse processes which have
> not healed . . . and has injuries to the disc at L2-L3 and especially

from Buffalo Spine & Sports Medicine in 2012[2] would
indicate that the [plaintiff] was not actively being treated by
these specialists for over two years until a new MRI was
obtained documenting increased degeneration and
pathology at L4-5 and new pathology at L3-4.[3] I believe with
a reasonable degree of medical certainty that the disc
abnormality at L3-4 was not related to the incident back in
7/2008. . . . As far as the disc at L4-5 is concerned, the
natural course of an abnormal disc is for the disc to
deteriorate over time. . . . The disc abnormality at L4-5 seen
on the MRIs in the fall of 2008 and 5/14/2009 would have
continued to progress over time and continue to worsen.

Dkt. #10, p.13.


On June 23, 2017, plaintiff appeared with counsel and testified before

Administrative Law Judge ("ALJ"), Paul Georger. Dkt. #8, pp.50-92. On October 4,

2017, ALJ Georger rendered a decision that plaintiff was not disabled. Dkt. #8, pp.26-

42. Following denial of a request for review by the Appeals Council, plaintiff

─────────────────────

at L4-L5 with a documented herniation which at the present time,
secondary to back pain, has surgical pathology. It is my belief that
there is permanence in his fractures and that they have not
healed and will not. These are a permanent source of back pain. It
is my belief that he has permanent partial disability of marked
degree related to the L4-L5 disc herniation and fractures at L1
and L4.

Dkt. #8, p.504.

[2] Dr. Leone reviewed medical records from Buffalo Sports and Spine Group between
October 20, 2011 and April 3, 2012, noting that plaintiff indicated at his last visit that he was
unable to stand for longer than 2 hours but was managing quite well now and would receive
epidural steroid injections as needed. Dkt. #9, p.999.

[3] Plaintiff's next appointment with Buffalo Sports and Spine Group was on July 23, 2014,
with a notation that plaintiff had responded well to the 2012 epidural steroid injection and
symptoms remained under good control until recently. Dkt. #9, p.457. Upon examination,
plaintiff's extension, flexion, and lateral bending was 25% restricted with mild to moderate pain
at the end range of motion. Dkt. #9, p.457. It was recommended that plaintiff obtain updated
imaging. Dkt. #9, p.457. Plaintiff received a right L5 transforaminal epidural steroid injection on
October 2, 2014 which resulted in significant improvement. Dkt. #9, pp.459 & 461.

commenced a lawsuit seeking review of the Commissioner's final decision on July 10, 2018. 18-CV-761. Pursuant to a Stipulated Order, the matter was remanded for further proceedings on June 6, 2019. 18-CV-761 at Dkt. #14.

Plaintiff underwent an internal medical examination by Hongbiao Liu, M.D., on September 3, 2019. Dkt. #10, p.549. Plaintiff reported that he could lift 20 pounds, could walk one block and that he changes position every five minutes while sitting or standing. Dkt. #10, p.549. Dr. Liu observed that plaintiff had a normal gait and walked on heels and toes with mild difficulty. His squat was 60%. Dkt. #10, p.550. He was able to rise from the chair without difficulty and needed no help changing for the exam or getting on and off the exam table. Dkt. #10, p.550. Plaintiff's lumbar spine revealed

> flexion and extension 80 degrees, lateral flexion 20 degrees
> bilaterally, and rotation 20 degrees bilaterally. SLR positive
> in the low back and bilateral below-knee areas at 45
> degrees, confirmed by supine and sitting position. Full ROM
> of shoulders, elbows, forearms, and wrists bilaterally.

Dkt. #10, p.551. Dr. Liu opined that plaintiff has "mild limitations for prolonged walking, bending, kneeling, squatting, stair climbing, and carrying weights." Dkt. #10, p.552.

On February 25, 2020, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Renee B. Jubrey, at an administrative hearing before ALJ Georger. Dkt. #10, pp.343-374. Plaintiff's attorney amended the alleged onset date of disability to May 14, 2013, when plaintiff was 52 years old, in reliance upon Dr. Leone's examination. Dkt. #10, p.349. Plaintiff testified that he has a Bachelor

of Fine Arts in Graphic Design and is a Licensed Stationary Engineer. Dkt. #10, p.352. Plaintiff lives with his wife and is able to drive. Dkt. #10, p.351. He has worked part-time - approximately twelve hours per week - as a stationary engineer keeping track of the compressors that maintain the ice temperature for the Bison Hockey Association since 2017. Dkt. #10, pp.352 & 364. He testified that he is unable to work full-time because of back pain, which radiates to his right leg, and memory issues. Dkt. #10, p.354. He no longer takes pain medication. Dkt. #10, p.355. He is only able to sleep about three hours at night, so he takes a daily nap. Dkt. #10, pp.356-357. He has difficulty with his short-term memory and ability to concentrate. Dkt. #10, p.359. Plaintiff uses an alarm on his phone because he finds it difficult to remember appointments. Dkt. #10, pp.364-365. He is able to care for himself and help with household chores. Dkt. #10, p.360. After he healed from his spinal fusion in 2015, plaintiff has been able to lift and carry about 20 pounds. Dkt. #10, pp.361-362. Prior to his spinal surgery, plaintiff attempted conservative treatment, including physical therapy, chiropractic care and spinal injections. Dkt. #10, p.363. In 2014, plaintiff testified that he was not able to lift more than 10 pounds. Dkt. #10, p.362.

The VE classified plaintiff's past work as skilled work performed at a medium exertion level. Dkt. #10, p.367. When asked to assume an individual with plaintiff's age, education and past work experience who could perform work at the light exertional level with occasional use of ramps, stairs, ladders, ropes, scaffolds and occasional balancing, stooping, kneeling, crouching and crawling, with no exposure to unprotected heights or moving mechanical parts and no operation of motor vehicles

during the workday, who was limited to simple, routine, repetitive tasks which were not

at a production rate, and simple work-related decisions, the VE testified that plaintiff

could not perform his past work, but could work as a cashier, sales attendant and

cafeteria attendant, each of which were unskilled, light exertion positions. Dkt. #10,

pp.369-370.

The ALJ rendered a decision that plaintiff was not disabled on May 13,

2020. Dkt. #10, pp.308-334. Pursuant to 20 C.F.R. § 404.984(d), plaintiff commenced

this action seeking review of the Commissioner's final decision on August 10, 2020.

Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*,

569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.

Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on

adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145

F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity between the alleged onset date of May 13, 2013 and the date last insured ("DLI"), of March 31, 2014; (2) plaintiff's post-concussion syndrome; depressive disorder; bipolar disorder; psychotic disorder; degenerative disc disease of the lumbar spine, status-post fusion surgery with instrumentation; and sacral fracture constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[4] with the following limitations: occasional climbing of ramps, stairs, ladders, ropes and scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling, no work at unprotected heights or around moving mechanical parts or operation of a motor vehicle at work, simple work-related decisions and simple, routine and repetitive tasks not at production rate pace; and (5) plaintiff was not capable of performing his past work, but was capable of working as a cashier, sales attendant and cafeteria attendant, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #10, pp.313-334.

Plaintiff argues that the ALJ failed to afford Dr. Leone's opinion sufficient weight and failed to explain the rationale for disregarding Dr. Leone's opinion, noting that Dr. Leone's opinion that plaintiff could lift no more than 10 pounds would render him disabled under the medical grids given his age and lack of transferable skills. Dkt. #15-1, pp.14-17. Moreover, plaintiff argues that each of the positions suggested by the

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1527(b).

VE require frequent reaching, while Dr. Leone opined that plaintiff could not perform overhead activity. Dkt. #15-1, pp.17-18. Plaintiff claims that the ALJ failed to sufficiently explain the rationale for affording the opinion of OTR Gula, greater weight than that of Dr. Leone, an orthopaedic spine surgeon. Dkt. #15-1, p.19. Plaintiff also asserts that his lumbar spine surgery, although performed after his DLI, was relevant to his condition prior to his DLI and also relevant to the ALJ's assessment of plaintiff's credibility. Dkt. #15-1, pp.20-24. Finally, plaintiff argues that the ALJ should have developed the record regarding Dr. Cappuccino's treatment of plaintiff prior to his operative report dated July 7, 2015. Dkt. #15-1, p.23.

The Commissioner responds that the ALJ properly evaluated opinion evidence from Dr. Leone and OTR Gula in assessing plaintiff's RFC. Dkt. #17-1, p.8. The Commissioner argues that Dr. Leone's 2015 and 2016 reports are irrelevant because they post-date plaintiff's DLI by more than a year and fail to establish functional limitations during the relevant time period. Dkt. #17-1, p.10. The Commissioner responds that plaintiff's surgery in 2015 does not suggest functional limitations during the relevant time period and argues that the ALJ was under no obligation to supplement the record with medical records subsequent to plaintiff's DLI. Dkt. #17-1, pp.12-14.

Plaintiff replies that the ALJ failed to provide sufficient explanation for crediting an occupational therapist over a spinal surgeon, particularly given that OTR Gula's examination preceded deterioration of plaintiff's disc at L3-4 and that Dr. Leone's opinion restricting plaintiff to sedentary work requires a finding of disability pursuant to

the grid rules. Dkt. #18, pp.4-6. Plaintiff also argues that the ALJ misrepresented Dr. Leone's March 10, 2016 review of plaintiff's medical records during the relevant time period. Dkt. #18, p.8. Plaintiff suggests that the ALJ may not have discounted his complaints of pain if the ALJ understood that plaintiff's lumbar spine condition was more severe prior to the DLI than previously thought, as evidenced by the subsequent surgery. Dkt. #18, p.9.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See. Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

The ALJ provided sufficient explanation for his assessment of the various medical opinions within the record. The ALJ afforded Dr. Leone's 2011 opinion little weight because Dr. Leone' opinion was rendered more than two years prior to the alleged onset date following one examination and did not describe any function-by-function limitations. Dkt. #10, p.327. The ALJ afforded OTR Gula's functional capacity evaluation significant weight because it was consistent with the medical evidence and

plaintiff's activities. Dkt. #10, p.330. The ALJ afforded Dr. Leone's 2013 opinions partial

weight because although they were based upon Workers' Compensation standards,[5]

they were consistent with the medical record as a whole and provided function-by-

function assessments that were generally consistent with the plaintiff's subjective

complaints, but not consistent with the medical evidence and plaintiff's activities. Dkt.

#10, p.330. The ALJ afforded Dr. Leone's 2015 and 2016 opinions little weight because

they were not consistent with the medical evidence of record and were rendered after

the DLI. Dkt. #10, p.331. The ALJ afforded Dr. Liu's opinion partial weight because his

findings were consistent with the medical record but based upon a single examination

well after the DLI and did not reflect the severity of plaintiff's condition during the period

at issue. Dkt. #10, p.331.


       The ALJ's determination that plaintiff could perform light work during the

time period relevant to this claim, *to wit*, between May 14, 2013 and March 31, 2014 is

supported by substantial evidence. It was within the ALJ's discretion to rely upon the

July 25, 2013 functional capacity assessment which determined that plaintiff was

capable of performing work at the light exertional level, with no more than mild limitation

of his ability to, *inter alia*, stand, walk, sit, reach, bend, kneel, or crawl. Dkt. #9, p.6. *See*

*William M. v. Comm'r of Soc. Sec'y*, 2021 WL 3077885, at *7 (W.D.N.Y. July 21, 2021)

_____

[5] Because assessment of disability under workers' compensation rules focus on an individual's ability to perform their prior job rather than the individual's functional capacity to perform basic work activities, such assessments are not binding for purposes of determining disability under social security regulations. *Michele B. v. Comm'r of Soc. Sec'y*, 20-CV-975, 2021 WL 5543940, at *5 (W.D.N.Y. Nov. 27, 2021). Furthermore, because the ultimate issue of disability is reserved for the Commissioner, opinions to the effect that an individual is disabled or unable to work are not entitled to any weight. 20 C.F.R. § 404.1527(e)(1).

(collecting cases finding that mild to moderate limitations for exertional activities are generally consistent with the demands of light work). Although Dr. Leone's report from May 14, 2013 opined that plaintiff could perform modified-type work despite his lumbar disc disease, albeit with a ten pound limit for lifting, pushing, pulling or carrying ten pounds and no repetitive overhead activity; Dr. Leone subsequently noted that this opinion incorporated plaintiff's subjective reports of difficulties in activities and was rendered without the benefit of the functional capacity evaluation. Dkt. #9, p.930 & Dkt. #10, pp.13 & 25. Moreover, Dr. Leone's March 10, 2016 report explained that from a purely objective standpoint, plaintiff's examination of May 14, 2013 demonstrated "no objective clinical findings, no loss of motion, no loss of function . . . no disturbance of gait . . . and did not require assistance with activities of daily living to indicate any significant objective disability." Dkt. #10, p.26. Thus, the ALJ sufficiently explained and appropriately determined that Dr. Leone's opinion was generally consistent with plaintiff's subjective complaints, but not with the medical evidence and plaintiff's activities, which supported a limitation to light exertion. Dkt. #10, p.330.

While Dr. Leone's 2015 report limited plaintiff to sedentary type work, with no overhead activity or lifting of more than 5-10 pounds, that opinion was rendered while plaintiff was recuperating from spinal surgery after plaintiff's DLI. Dkt. #9, pp.951-953 & Dkt. #10, p.26. Moreover, although Dr. Leone opined that plaintiff's L4-L5 disc injury degenerated between the time of injury and his spinal surgery and that plaintiff's L3-4 disc began to show signs of degeneration and bulging in 2014 and 2015, he also recognized that plaintiff had not received treatment for his spinal impairment during the

relevant time period. Dkt. #10, p.13. Plaintiff reported to Buffalo Sports and Spine Group on July 23, 2014 (which was subsequent to the DLI), that he had responded well to the 2012 epidural steroid injection (which was prior to his amended alleged onset date), and his symptoms had been under good control until recently. Dkt. #9, p.457. Thus, there is insufficient evidence to support plaintiff's argument that his 2015 spinal surgery was relevant to his RFC for the time period at issue in this action. Moreover, although plaintiff suggests that additional treatment records from Dr. Cappuccino might shed additional light on the circumstances prompting his 2015 surgery, there is no suggestion that there are any such records encompassing the time period at issue in this action. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. 2012) (evidence demonstrating a worsening of plaintiff's condition after DLI is not relevant to ALJ's determination).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:      Buffalo, New York**
**            March 30, 2022**

                                   s/ H. Kenneth Schroeder, Jr.
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**